739 P.2d 411

**Dennis JOHNSON, Petitioner-Appellant,**

**v.**

**STATE of Idaho, Respondent.**

**No. 16624.**

Court of Appeals of Idaho.

June 4, 1987.

Alan E. Trimming, Ada County Public Defender, Neal S. Stivers, Deputy Public Defender, Boise, for petitioner-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and David R. Minert, Deputy Atty. Gen., Boise, for respondent.

PER CURIAM.

We are asked to decide whether the district court erred in refusing to enter a

default judgment against the state for failure to respond to an application for postconviction relief. This issue is raised on appeal by Dennis Johnson, who filed the application while incarcerated in the Ada County jail. For reasons explained below, we affirm the order of the district court declining to enter a default judgment and dismissing the application on its merits.

## I

Upon conviction of burglary and grand theft, Johnson received a prison sentence in the custody of the Board of Correction. However, the sentence was commuted to a jail term. Johnson filed his application for postconviction relief in June, 1983, alleging the breach of a plea agreement, ineffective assistance of counsel, and cruel and unusual treatment at the Ada County jail. While the application was pending, Johnson was convicted of perjury and was given a separate prison sentence. The postconviction relief application lay dormant until April, 1984, when Johnson appeared for a hearing on a motion under I.C.R. 35 to reduce his perjury sentence. The following colloquy ensued:

> MR. JOHNSON: Not to complicate matters any more than what they are, but while I was in the county jail, Your Honor, on June 13th of 1983 I filed a postconviction relief on this sentence, also. And at that time there was [sic] ten different letters that accompanied the postconviction relief, the originals, to the clerk's office.
>
> THE COURT: Did you ever find out what the file number on that was?
>
> MR. JOHNSON: 9910. There's a copy of it.
>
> THE COURT: I have 9910 here. This is the original case and not the post conviction relief?
>
> MR. JOHNSON: Right.
>
> THE COURT: There should be an H.C. number on the postconviction relief, should be a habeas corpus number that should be assigned, I believe. Isn't that the procedure?
>
> [DEPUTY PROSECUTOR]: It is, Your Honor.
>
> THE COURT: Do you have any information on that?
>
> THE CLERK: (Shaking head in the negative.)
>
> THE COURT: Well, I'll have the clerk check that out, too. You say there's ten letters in there?
>
> MR. JOHNSON: Yes.
>
> THE COURT: Was that matter ever resolved, the habeas corpus?
>
> MR. JOHNSON: No, not at all.
>
> THE COURT: I'll have the clerk find out where that is, then.
>
> MR. JOHNSON: That's been since June of 1983.
>
> [PUBLIC DEFENDER]: I'd note that I've had discussions with Dennis Johnson over the telephone indicating to me at some point in time after that he did not want to pursue that habeas corpus any further.
>
> THE COURT: Oh.
>
> [PUBLIC DEFENDER]: Yes. I think the court should be aware of that.
>
> THE COURT: Has that been dismissed?
>
> MR. JOHNSON: No, Your Honor, there has been—
>
> [PUBLIC DEFENDER]: I don't know if it's been dismissed, Judge. I do know I had some lengthy discussions with Dennis about that, and at the time—I don't have the date. I could get the file and give you the date when I spoke with him. He indicated he didn't want to pursue it any longer.
>
> MR. JOHNSON: That was in August, right around the sentencing for perjury. At that time the public defender's office encouraged me to not press that habeas corpus for the fact that it would possibly influence my sentence on my perjury.
>
> [PUBLIC DEFENDER]: I don't know if that was the reason, Your Honor. I spoke with Mr. Johnson about it. I could look in the file, Judge.

After this hearing, the matter of postconviction relief resumed its dormancy. Johnson requested no hearing or judgment on the application. Neither did the state respond to the application. Finally, nearly two years later, on March 27, 1986, John-

son filed a pro se "Request for Clerk to Enter Default Judgment" pursuant to I.R. C.P. 55(a)(1). He alleged that the state had failed to plead responsively to his petition as required by I.C. § 19–4906(a).[1] The state filed a motion in opposition to the entry of default judgment. In an affidavit supporting the motion, the deputy prosecuting attorney stated that he had examined the pertinent file and had found no application for postconviction relief filed or lodged with the court. Further, he said he had searched the records in the prosecutor's office and had been unable to find any entry reflecting service of Johnson's application on the state. The affiant concluded that the copy of the application received on March 27, 1986, was the first service.[2]

The matter was continued several times. A hearing was held in August 1986, after which the district judge denied the motion to enter default. In so doing, he stated:

> I have had the court reporter review fully the proceedings in April, 1984.
>
> I have concluded that the prosecutor did not acknowledge receipt of the post conviction relief petition, but instead, that petitioner's counsel indicated that petitioner had expressed a desire to abandon it. At the most, the net result was confusion over the pendency of those proceedings.
>
> Whatever the remedy for the court clerk's failure to notify the prosecutor that such a petition has been filed, it would not be appropriate to enter a default judgment granting the relief requested regardless of the merits of the petition.

The district judge also determined that the application itself was without merit and dismissed it. Johnson appeals from the order denying his application for a default judgment.

## II

In proceedings for postconviction relief, the Idaho Rules of Civil Procedure apply. I.C.R. 57(b); *see generally State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983). The power to enter a default judgment is governed by Rule 55, I.R.C.P. The Idaho rule is substantially similar, in respects relevant to this case, to Federal Rule 55. Under the latter rule, the grant or denial of an application for the entry of default judgment rests within the discretion of the trial court. *See* 10 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2685 (2d ed. 1983) (hereinafter WRIGHT).

 This discretionary standard is appropriate and should be applied in Idaho. *Cf. Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App.1983) (decision to grant or deny motion to set aside default judgment within discretion of trial court). In exercising its discretion, the court may consider the reasons for the failure to respond. WRIGHT, *supra*, at § 2685. If the default was caused by a good faith mistake or by excusable neglect, the court may deny the application. *E.g. Alford v. National Post Office Mail Handlers*, 576 F.Supp. 278 (E.D.Mo.1983); *Latini v. R.M. Dubin Corp.*, 90 F.Supp. 212 (N.D.Ill.1950). The adequacy of notice is a factor to be considered in this regard. *See Camp v. Guercio*, 464 F.Supp. 343 (W.D. Pa.1979); *Cf. Ennis v. Casey*, 72 Idaho 181, 238 P.2d 435 (1951) (default judgment void where party neither was served with a copy of amended complaint nor made an appearance). The court also may consider whether the nondefaulting party has been substantially prejudiced by the delay. *Camp v. Guercio, supra*. Finally, as the district judge noted in the present case, the court may consider the merits of the underlying cause of action in determining wheth-

---

1. Section 19–4906(a) provides, in pertinent part: "Within 30 days after the docketing of the application, or within any further time the court may fix, the state shall respond by answer or by motion which may be supported by affidavits."

2. The fault for nondelivery does not appear to lie with Johnson. A letter from the clerk of the district court clearly indicates that Johnson filed the petition in June, 1983, as he claims. Somehow the papers were not delivered by the clerk to the Ada County prosecutor's office. The clerk is obligated to docket the application and to deliver a copy to the prosecuting attorney. I.C. § 19–4902.

er entry of default judgment is appropriate.[3] *Peerless Industries, Inc. v. Herrin Illinois Cafe, Inc.*, 593 F.Supp. 1339 (E.D. Mo.1984), *aff'd without op.*, 774 F.2d 1172 (8th Cir.1985).

 We now apply these principles to the case at hand. As noted above, the prosecutor initially failed to respond to the petition because the clerk had not delivered the papers to the prosecutor's office.[4] Johnson claims also to have mailed a copy of the petition to the prosecutor's office. What became of this copy is unknown. In any event, the applicant's delay in seeking a judgment was—according to his counsel—the result of a tactical decision not to pursue the matter while the perjury charge was outstanding. As the district court noted, "the net result was confusion over the pendency of those proceedings." Further, Johnson has not identified any unfair prejudice resulting specifically from the state's part in the totality of events producing delay. Indeed, he has not challenged in this appeal the district judge's determination that the assertions of ineffective assistance and of breach of a plea bargain were meritless. Neither has he argued in this appeal that the judge erred by treating as moot the allegation of cruel and unusual confinement at Ada County jail, after Johnson was sent to the penitentiary for perjury. In short, this appeal has failed to establish either that the district judge abused his discretion on the issue of delay or that he erred in his evaluation of the merits of the postconviction relief application. Considering all these factors, it is evident that the district judge did not abuse his discretion in refusing to grant default judgment.

Accordingly, the district court's order is affirmed.

---

**3.** Rule 55(e), I.R.C.P., not only authorizes but arguably requires the court to consider the substance of the claims and to refuse to enter a default judgment against the state if the action is without merit. The Rule provides that "[n]o judgment by default shall be entered against the state of Idaho ... unless the claimant establishes his claim or right by evidence satisfactory to the *court.*" There are no reported decisions in Idaho discussing Rule 55(e). Whether the claimant must prove that he would prevail on the merits, or merely show that his action is potentially meritorious, cannot be authoritatively ascertained from the language of the Rule. One federal court, interpreting the virtually identical federal rule, has opined that "the quantum and quality of evidence that might satisfy a court [allowing it to enter default against the government] can be less than that ... required [to prevail at trial]." *Alameda v. Secretary of Health, Education and Welfare*, 622 F.2d 1044,

1048 (1st Cir.1980). *See also Marziliano v. Heckler*, 728 F.2d 151 (2d Cir.1984). In this case, the trial court properly exercised its discretion in refusing to enter a default judgment against the state. Accordingly, we need not decide today whether such a lesser standard applies in Idaho, nor whether Johnson's proof was so lacking that the trial court would have been precluded from entering a default judgment against the state here.

**4.** The prosecutor's inability to locate a court file containing the petition apparently was due to confusion stemming from multiple proceedings involving the defendant. There is no question that the clerk of court did in fact receive the petition. However, as mentioned earlier, there was no indication that the clerk ever served the prosecutor's office.